Filed 10/26/23  P. v. Brown CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH IRBY BROWN,<br><br>    Defendant and Appellant. | 2d Civil No. B321228<br>(Super. Ct. No. 1442714)<br>(Santa Barbara County) |

Joseph Irby Brown appeals from the judgment following resentencing.  On remand from the previous appeal, the trial court sentenced Brown to 25 years to life in state prison for second degree robbery with two prior strikes (count 1, Pen. Code[1], §§ 211, 667, subd. (e)(2)(A)(ii)), plus a determinate term of 16 years for resisting an officer by threats or violence (count 3, § 69, doubled pursuant to § 667, subd. (e)(2)(C)) and two prior serious felony convictions (§ 667, subd. (a)(1)).

---

[1] All undesignated statutory references are to the Penal Code.

Brown contends the trial court erred when it found him ineligible for mental health diversion, did not dismiss five-year enhancements for prior serious felony convictions, did not reconsider his *Romero* motion to dismiss prior strikes (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497), and imposed the high term for count 3. He also contends errors in the abstracts of judgment must be corrected. We remand to correct errors in the abstracts of judgment. In all other respects, the judgment is affirmed.

FACTUAL AND PROCEDURAL HISTORY[2]

*Gas station robbery*

Brown was convicted following a jury trial of second degree robbery of a gas station (count 2, § 211) and a misdemeanor count of wearing a mask or disguise to avoid detection (count 4, § 185). The jury found true an enhancement for use of a deadly weapon (§ 12022, subd. (b)(1)). In the first appeal in this case, we reversed both counts based on an involuntary confession. (*People v. Brown*, Nov. 3, 2020, B291733, opn. on rehg. [nonpub. opn.].) On remand, the district attorney opted to not retry these counts, and the court dismissed them on the People's motion.

*Bank robbery*

In December 2013 Brown entered a Rabobank in Santa Barbara wearing a baseball cap, a grey sweatshirt with the hood over his head, sunglasses, and black gloves. Teller G.D. was immediately suspicious because it was not a cold day and the clothing was unusual.

Brown took a deposit slip and wrote on it, "Give me the money[.] No one gets hurt[.] Act stupid you die." He went to the

---

[2] The factual summary is derived from our opinion and the record in the first appeal. We take judicial notice of that opinion.

2

teller window and set down the note. G.D. put about $4,000 in currency on the counter. Brown asked if there was a dye pack, and G.D. assured him there was not. G.D. was unable to take the note because Brown had his finger on it. He put the money under his sweatshirt and walked out of the bank.

Officer Richard Washington detained Brown a few blocks from the bank. Brown had changed his clothes and was holding a bag containing a hoodie and hat that closely resembled those worn by the robber in a photograph transmitted by the bank. When Washington radioed for backup, Brown stood up and ran. Washington caught Brown and tackled him. Brown got up and continued running. Washington tackled him a second time. Brown got up again, grabbed the officer's motorcycle helmet, and wrenched his head back and to the right. Washington subdued Brown with the help of a citizen.

Washington suffered lacerations to his face and elbow and abrasions to his hand. His uniform was ripped and his helmet was broken.

The jury convicted Brown of second degree robbery of a bank (count 1, § 211) and forcibly resisting the police officer who detained him for that robbery (count 3, § 69). He admitted he suffered two prior serious felony convictions (§ 667, subd. (a)(1)) and two prior strikes (§ 667, subds. (d)(1), (e)).

*Defendant's trial testimony*

Brown testified he was ambushed by two men in November 2012. Hospital records showed he suffered serious permanent injuries consistent with being shot twice with an assault rifle and stabbed twice with a machete. Brown testified that after leaving the hospital, he suffered from physical pain, weakness, nerve damage, recurring fear he was being attacked, and memory

3

problems.  He "tried to never sleep" because he would have nightmares and flashbacks of his attack.

Brown testified he often wore hats and hoodies to hide from people trying to kill him.  He sometimes wore gloves because of nerve damage to his hands.

On the day of the bank robbery, Brown had $30 in his pocket to buy prescription medication.  His practice was to sell the prescription medication and use the money to buy street drugs.  He believed he began experiencing a blackout between 3:30 and 6:30 a.m.  He stood in front of the drug store, then went into Rabobank across the street.  He wrote the note, gave it to the teller, and robbed the bank.  He said he had an out-of-body experience in the bank and came "back into [himself]" when he exited.

While running from the bank, he saw a woman he knew. He went to her home, changed clothing, transferred the $30 to the new clothing, and put the clothing from the robbery into a bag.  He called a taxi and went outside to meet it.

Brown testified that when he heard Officer Washington call for backup, he decided to run and "try to be free as long as I could."  He pushed the officer's face to try to get away.

*Trial evidence of mental state*

Brown's brother testified that Brown became paranoid after his release from the hospital in January 2013.  He stared out the windows of his house and locked himself in the bathroom for hours every day.  This behavior continued for two to four months after Brown was released from the hospital, but not through November or December 2013.  On several occasions, continuing through 2013, Brown was unable to remember things he had done recently.

4

Dr. Nancy Kaser-Boyd, a clinical and forensic psychologist with extensive experience in PTSD, testified for the defense. She said PTSD is caused by an incident where a person feels they are going to die or senses a threat to their physical integrity. Brown had PTSD, exacerbated by substance abuse. She testified that Brown's behavior during the bank robbery was consistent with a dissociative state, which she described as "a split in consciousness where the regular state of thinking and being is split off and there is an altered state." It can occur with PTSD. Symptoms of a dissociative state can include loss of awareness of one's surroundings and blackouts with absence of memory of one's actions. But she agreed that Brown remembered his conduct during the robbery. She testified an individual in a dissociative state may exhibit "robotic" behavior of something they commonly do. But she agreed it would not include "walking into a bank and writing down a note and handing it to a teller" unless the person has "done it before." She said Brown was not hallucinating or delusional during the robbery.

In rebuttal, the prosecution called Dr. James Tahmisian, a clinical psychologist with 45 years' experience. He concluded that Brown was not in a dissociative state during the bank robbery but demonstrated situational awareness and engaged in goal-directed behavior.

*Original sentence*

In the original sentencing on July 2, 2018, the trial court denied Brown's *Romero* motion to dismiss the strikes. The court sentenced Brown to a determinate term of 27 years, consisting of the upper term of three years for the violation of section 69, doubled for the prior strikes (§ 667, subd. (e)(2)(C)), one year for use of a deadly weapon (§ 12022, subd. (b)(1)), and five years for

5

each of the four serious felony priors (§ 667, subd. (a)(1)).  He was sentenced to consecutive indeterminate Three Strikes terms of 25 years to life for each of the robberies, for a total of 50 years to life, to follow the determinate term.  (§§ 211, 667, subd. (e)(2)(A)(ii)) & (2)(B).)  The court imposed a concurrent 180-day county jail sentence for the misdemeanor (§ 185, count 4).

*First appeal*

In the first appeal, we reversed counts 2 and 4 based on an involuntary confession.  We conditionally reversed counts 1 and 3 and directed the trial court to conduct a mental health diversion eligibility hearing (§§ 1001.35, 1001.36).  We ordered: "If the court determines that Brown is ineligible for diversion, or he does not successfully complete diversion: (1) he may be retried for counts 2 and 4 and the deadly weapon enhancement, (2) the conviction for counts 1 and 3 and the admission of the prior serious felony convictions and prior strikes shall be reinstated, (3) he shall be resentenced, and (4) the court shall exercise its discretion whether to strike the serious felony priors."  Our Supreme Court denied Brown's petition for review (S265909).

*Resentencing*

On remand in April 2022, the trial court denied mental health diversion.  The court also granted the People's motion to dismiss counts 2 and 4 and the accompanying deadly weapon enhancement and five-year priors; declined to dismiss the five-year enhancements to count 1 for the two serious felony priors (§ 667, subd. (a)(1)); and declined to reconsider denial of the *Romero* motion.

The court sentenced Brown to 25 years to life for count 1 with two prior strikes.  (§§ 211, 667, subd. (e)(2)(A)(ii).)  The court imposed the high term of three years for count 3, doubled it for

the strikes, and added enhancements for the two five-year serious felony priors, for a total determinate sentence of 16 years.  (§§ 69, 667, subds. (a)(1), (e)(2)(C).)

## DISCUSSION

*Mental health diversion*

On June 27, 2018, the Governor signed Assembly Bill No. 1810 (2017-2018 Reg. Sess.), providing for diversion of individuals with mental disorders.  (§§ 1001.35, 1001.36, enacted by Stats. 2018, ch. 34, § 24.)  In the first appeal, we remanded for the trial court to determine whether to grant mental health diversion.  (*People v. Frahs* (2020) 9 Cal.5th 618, 640-641; see *People v. Braden* (2023) 14 Cal.5th 791, 802-803.)  Brown contends the trial court abused its discretion when it denied diversion.  We disagree.

*1.  Senate Bill No. 1223*

After the trial court's ruling on remand, section 1001.36 was amended to expand the availability of mental health diversion.  (Stats. 2022, ch. 735, § 1 (Sen. Bill No. 1223 (2021-2022 Reg. Sess.), eff. Jan. 1, 2023.)  The Attorney General correctly concedes the amendment applies to the current appeal.

The amended statute made two significant changes regarding *eligibility* for diversion: (1) the defendant "has been diagnosed with a mental disorder" (replacing the previous requirement that "[t]he court is satisfied that the defendant suffers from a mental disorder"), and (2) establishing a rebuttable presumption that the "mental disorder was a significant factor in the commission of the charged offense."  (§ 1001.36, subd. (b)(1) & (2).)

If the defendant is eligible for diversion, the court "may, in its discretion" grant diversion if "the court determines that the

7

defendant is *suitable*." (§ 1001.36, subd. (a), italics added.) Suitability requires that four criteria are met. There is no dispute that Brown met three of the suitability criteria because he was diagnosed with a mental disorder, would consent to diversion, and agreed to comply with treatment. (§ 1001.36, subds. (b)(1), (c)(2) & (3).) But as discussed below, the court found that Brown did not meet the fourth suitability requirement because he posed an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (c)(4).)

"A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation]." (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.) "This standard involves abundant deference to the trial court's rulings." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.) The record here supports the trial court's exercise of discretion to deny diversion.

### 2. Significant factor in commission

Regarding eligibility, the mental health diversion statute originally required the court to be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, former subd. (b)(1)(B).) Senate Bill No. 1223 created a presumption that the court "shall find" the disorder was a significant factor "unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

8

The trial court here did not find a "nexus between the criminal conduct of Mr. Brown and any alleged delusional behavior or symptomology."

We need not remand for reconsideration of the "significant factor" requirement for eligibility pursuant to Senate Bill No. 1223. Under either version of the statute, the trial court would have found Brown was not *suitable* for diversion because it found he posed an unreasonable risk of danger to public safety if treated in the community. (See *People v. Jefferson* (2019) 38 Cal.App.5th 399, 407 [declining to remand for retroactive application of original version of § 1001.36 where record " 'clearly indicates' the trial court would not have found defendant eligible for diversion"].)

*3. Danger to public safety*

One criterion for diversion suitability is: "The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." Among the factors the court may consider are "the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§§ 1001.36, subd. (c)(4), 1170.18, subd. (b)(1).) " '[U]nreasonable risk of danger to public safety' " means an unreasonable risk the defendant will commit an offense listed in section 667, subdivision (e)(2)(C)(iv), commonly referred to as " 'super strikes.' " (§ 1170.18, subd. (c); *People v. Hall* (2016) 247 Cal.App.4th 1255, 1262, fn. 6.) Evaluation of the risk to public safety is "a quintessential discretionary function." (*People v. Moine, supra*, 62 Cal.App.5th at p. 448.)

The trial court found that based on Brown's "prior criminal history spanning many years," he had the potential to commit a

9

future "super strike." Brown's record included two 1998 strike convictions for armed robbery, a 1993 robbery with great bodily injury, assault by force likely to produce great bodily injury, battery on a peace officer, two convictions for fighting in public, and escape from jail. The probation report also included a risk of violence and recidivism assessment tool that found Brown had a high score for history of violence, a high risk for violent recidivism, and a high score of noncompliance when placed in the community.

This case is unlike *People v. Moine*, *supra*, 62 Cal.App.5th 440, upon which Brown relies. There the trial court abused its discretion when it denied mental health diversion. *Moine* relied on the unrefuted opinions of two psychiatrists that the defendant posed a low risk of future assault. (*Id.* at p. 451.) Here, Dr. Kaser-Boyd stated, without explanation, "If Mr. Brown participates in the treatment he needs . . . he does not present a risk of committing the violent acts identified in the law." (Italics omitted.) But the violence and recidivism tool in the probation report was to the contrary. *Moine* distinguished *People v. Hall*, *supra*, 247 Cal.App.4th at pages 1265-1266, who, like Brown, had a lengthy history of crimes, including two strike convictions for robbery. (*Moine*, at p. 451.)

Nor is this case like *People v. Williams* (2021) 63 Cal.App.5th 990, upon which Brown relies. Psychiatrists found Williams's risk of violence was low. He had no prior felony record, and he had never assaulted anyone. (*Id.* at pp. 997-998, 1002-1003.) In contrast, Brown had an extensive criminal history, including armed robberies and assault.

The prosecutor told the trial court the current robbery was a super strike because it carried a Three Strikes life sentence.

This argument is contrary to *People v. Hernandez* (2017) 10 Cal.App.5th 192, 202, but Brown did not refute it in the trial court. The record does not show that the court accepted this claim, and in any event, prior commission of a super strike is not required to find an unreasonable risk of danger to public safety. (*People v. Hall*, *supra*, 247 Cal.App.4th at p. 1266.)

Moreover, there was no assurance Brown would remain medication-compliant in the community and receive other services and treatment necessary to avoid substance abuse and criminal conduct. Brown had a prescription for Norco when he committed the offenses, but his practice was to sell the pills and use the money to buy illegal drugs. As we concluded in *People v. Pacheco* (2022) 75 Cal.App.5th 207, 213-214, the trial court was not required to accept the defendant's assurances that he would comply with treatment if released to the community. As in *Pacheco*, the trial court here acted within its discretion in denying mental health diversion based on its assessment of unreasonable risk of danger if the defendant was treated in the community.

Brown notes that the court impliedly found that Brown did not pose an unreasonable risk of danger to public safety when it reduced a 1994 narcotics possession conviction to a misdemeanor pursuant to section 1170.18. But that order occurred before the current convictions for bank robbery and resisting an officer by violence.

A finding of future dangerousness may also be based on the circumstances of the current offenses. (*People v. Bunas* (2022) 79 Cal.App.5th 840, 861-862.) Brown robbed a bank, threatened the teller with death if she did not cooperate, and fought with and injured a police officer.

11

The circumstances of the current offenses and Brown's criminal history support the trial court's exercise of discretion to conclude that Brown "pose[d] an unreasonable risk of danger to public safety" and that diversion would not meet the statutory goal of "protecting public safety." (§§ 1001.36, subd. (c)(4), 1001.35, subd. (a).) No abuse of discretion has been shown.

*Serious felony priors*

Brown contends the trial court erred when it failed to dismiss the five-year enhancements for the prior serious felony convictions. We disagree.

Brown admitted two prior serious felony priors based on 1998 robbery convictions. (§ 667, subd. (a)(1).) In the first appeal, we remanded for the trial court to exercise its newly authorized discretion to determine whether to strike the priors. (§§ 667, 1385, as amended by Senate Bill No. 1393 (2017-2018 Reg. Sess.); Stats. 2018, ch. 1013, §§ 1-2.)

Before resentencing, section 1385 was further amended by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1). The amended statute applies to all sentencings after January 1, 2022. (§ 1385, subd. (c)(7).) It provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1).) It further provides, "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the

12

dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)[3]

On resentencing, the prosecution noted the court had discretion to dismiss the enhancements and asked the court to impose them "based on the circumstances in aggravation that were presented at the trial as well as Mr. Brown's significant criminal history." The court declined to dismiss the enhancements, stating, "based on my reading of the case, and the allegations of the case I think it is appropriate for the court to impose the nickel prior, the enhancement."[4]

Brown contends the trial court should have dismissed the enhancements based on three mitigating circumstances listed in section 1385, subdivision (c)(2):

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

[¶] . . . [¶]

"(D) The current offense is connected to mental illness.

[¶] . . . [¶]

"(H) The enhancement is based on a prior conviction that is over five years old."

At the resentencing, Brown did not mention the amendments of Senate Bill No. 81, did not argue that the court was required to strike either prior or that it should exercise its discretion to do so, and did not request a finding regarding public

---

[3] Section 1385 was amended again by Assembly Bill No. 200 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 58, § 15), but the amendment is not pertinent to the issues in this appeal.

[4] The court actually imposed two five-year priors.

13

safety. He has not forfeited the issue, however, because he contends imposition of multiple enhancements resulted in an unlawful sentence (*People v. Scott* (1994) 9 Cal.4th 331, 354), and he challenges the sufficiency of the evidence to support the implied finding that dismissal of the enhancements would endanger public safety (*People v. Butler* (2003) 31 Cal.4th 1119, 1128 & fn. 5).

The Attorney General concedes that multiple enhancements were applied, the offenses were "connected to mental illness," and the prior offenses were over five years old. But substantial evidence supports the implied finding that dismissal of enhancements would endanger public safety. The finding is supported by the circumstances of the offenses, including robbing a bank with a threat to kill the teller, fighting with, and injuring, the arresting officer, and Brown's extensive criminal record including armed robberies and assaults.

Brown contends the court was required to dismiss at least one prior based on the seemingly mandatory language that "all enhancements beyond a single enhancement *shall* be dismissed." (§ 1385, subd. (c)(2)(B), emphasis added.) We disagree. We join the other appellate panels that have considered the issue and, for the reasons stated in those cases, we conclude the trial court retains discretion whether to dismiss multiple enhancements. (*People v. Anderson* (2023) 88 Cal.App.5th 233, 240-241, review granted Apr. 19, 2023, S278786; *People v. Walker* (2022) 86 Cal.App.5th 386, 396-399, review granted Mar. 22, 2023, S278309.) This conclusion is in accord with the cases that conclude the trial court retains discretion whether to dismiss "an enhancement [that] could result in a sentence of over 20 years" (§ 1385, subd. (c)(2)(C)), notwithstanding the same statutory

14

language that it "shall be dismissed." (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 297; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17-21.)

The trial court's exercise of discretion " ' " 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Mendoza, supra*, 88 Cal.App.5th at p. 298.) The trial court here acted within its discretion based on Brown's offenses and criminal record. (*People v. Walker, supra*, 86 Cal.App.5th at p. 398, review granted [multiple enhancements not dismissed where danger to public safety]; see *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1097, review granted Apr. 12, 2023, S278894 [considering factors in addition to public safety to not dismiss enhancement connected to mental illness].)

Romero *motion*

Brown contends the trial court improperly failed to reconsider his motion to dismiss his prior strikes on remand. (*People v. Superior Court (Romero), supra*, 13 Cal.4th 497.) We agree but conclude the error is harmless.

In the initial sentencing in 2018, the trial court denied the *Romero* motion. The court noted that the 1998 prior strikes were "almost identical" to the new offenses, i.e., robberies "putting people at significant risk, both mentally and physically." Although the strikes were committed approximately 16 years earlier, Brown spent 11 years in prison until he was paroled in 2008 and then committed the current offenses in 2013.

On resentencing, Brown asked the trial court to reconsider the *Romero* motion and "at least strike one of the strikes." Brown argued the prior strikes were 23 years old, no violence was

15

intended in the bank robbery, and he suffered from PTSD.

The prosecutor argued "[t]he only two issues in front of the [c]ourt" were diversion and the five-year priors. The prosecutor stated, "In terms of a Romero motion, that motion was heard at sentencing by Judge Herman, and so I don't believe the Court needs to take that into consideration nor really has jurisdiction to hear that." The court responded, "I thought so."

The court then imposed sentence, including a Three Strikes sentence of 25 years to life for count 1, without mentioning its discretion to dismiss a strike pursuant to *Romero*. The defendant then personally asked the court about the *Romero* motion and asked, "you're not able to do that at this point?" The court responded, "No."

The Attorney General concedes the trial court had jurisdiction to reconsider the *Romero* motion on remand. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) He nevertheless contends the trial court knew it had discretion to dismiss the strikes, and properly exercised that discretion. But the record shows the court accepted the prosecutor's position that the court had no jurisdiction and did not reconsider dismissing the strikes. A trial court abuses its discretion when it "was not 'aware of its discretion' to dismiss." (*People v. Carmony* (2004) 33 Cal.4th 367, 378; *People v. Banks* (1997) 59 Cal.App.4th 20, 23-24 [remand for *Romero* motion].)

Although failure to reconsider the *Romero* motion was error, it was harmless. This is not one of the " 'extraordinary [cases] . . . by which a career criminal can be deemed to fall outside the spirit' " of the Three Strikes law. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.) The age of the strikes, Brown's criminal record, the nature of the bank robbery, and Brown's

16

mental health issues remain unchanged since the original sentencing when the court denied the *Romero* motion.

This case is like *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, in which the trial court erroneously believed it did not have discretion to dismiss strikes. Our colleagues in Division 2 concluded the trial court would not have exercised its discretion to lessen the sentence as evidenced by its imposition of the maximum possible sentence, including the high term and two discretionary one-year enhancements. The court found "no purpose would be served in remanding for reconsideration." (*Id.* at p. 1896.) The record here is similarly clear the trial court would not have dismissed either strike. It imposed the five-year enhancements based on the circumstances of the present offenses and Brown's prior record, and selected the high term for the determinate sentence. Accordingly, we decline to remand for reconsideration of the *Romero* motion.

*Upper term*

Brown contends the trial court erred when it imposed the high term for count 3 (§ 69). We again disagree.

Section 1170, subdivision (b) was amended effective January 1, 2022, by Senate Bill No. 567 (2021-2022 Reg. Sess.), which incorporated amendments in Assembly Bill Nos. 124 and 1540. (Stats. 2021, ch. 731, § 1.3.) The Attorney General correctly concedes the amendment applies to the 2022 resentencing here. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

The amended statute allows imposition of the high term only if justified by circumstances in aggravation, "and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at

17

trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

On remand, the court imposed the high term of three years for count 3, doubled for the prior strikes (§ 667, subd. (e)(2)(C)). The court took judicial notice of the aggravating factors listed in the probation report, specifically that Brown's violent conduct indicated a serious danger to society, there were numerous prior convictions increasing in severity, and he served a prior prison term. (Cal. Rules of Court, rule 4.421(b)(1), (2), (3).)[5]

The probation report listed one factor in mitigation: "The defendant voluntarily acknowledged wrongdoing before arrest." (Rule 4.423(b)(8).) Brown additionally argued in the *Romero* motion that he suffered from PTSD and did not intend violence in the robbery. (Rule 4.423(b)(2) & (c).)

"[T]he court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) Based on records of prior convictions, the court may, without a jury finding, determine that the defendant served a prior prison term, or the defendant's prior convictions "are 'numerous or of increasing seriousness.' " (*People v. Towne* (2008) 44 Cal.4th 63, 70, 75-76.) Such determinations do not violate the Sixth Amendment right to jury trial as provided in *Apprendi v. New Jersey* (2000) 530 U.S. 466. (*Towne*, at pp. 75, 79-80.)

Because Brown did not object in the trial court to the court taking judicial notice of the factors in aggravation listed in the probation report rather than a "certified record of conviction,"

---

5 All rule references are to the California Rules of Court.

he has forfeited that objection.  (Evid. Code, § 353, subd. (a); *People v. Achane* (2023) 92 Cal.App.5th 1037, 1043-1044.)  Nor does Brown contend that Brown's criminal history contained in the probation report is inaccurate.

Rule 4.421(b)(2) requires that prior convictions be either "numerous *or* of increasing seriousness."  (Italics added.)  Brown's record shows both.  Because the 1998 robberies were used to enhance the sentence (§ 667, subd. (a)(1)), they could not be used to impose the high term.  (§ 1170, subd. (b)(5).)  But Brown had numerous other convictions.  (*People v. Searle* (1989) 213 Cal.App.3d 1091, 1098 [three convictions are numerous].)  Increasing seriousness was shown by two misdemeanor convictions for fighting in public, followed by a felony drug possession charge, a misdemeanor battery of a peace officer, followed by a felony escape conviction.

Brown's record also established the aggravating factor of "a prior term in prison."  (Rule 4.421(b)(3).)  Without considering the 1998 prison terms for robberies, he was sentenced in 1995 to two years in prison for drug possession, and in 1998 to eight months in prison for escape.

Because the jury did not determine that "[t]he defendant has engaged in violent conduct that indicates a serious danger to society" (rule 4.421(b)(1)), the trial court erred in considering it as an aggravating circumstance.  (See *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1139, review granted May 17, 2023, S279147.)  But the error is harmless because the trial court properly considered the circumstances of prior prison terms and convictions that were numerous or of increasing seriousness, and "the record 'clearly indicate[s]' that the trial court would not impose a more favorable sentence upon theoretical reversal for

19

resentencing." (*People v. Flowers* (2022) 81 Cal.App.5th 680, 686, review granted Oct. 12, 2022, S276237.) Application of the test articulated in *People v. Dunn* (2022) 81 Cal.App.5th 394, 409-410, review granted Oct. 12, 2022, S275655, leads to the same result: the error is harmless because the trial court properly determined two aggravating circumstances based on Brown's record, and "there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt." (*Id.* at p. 410; see *People v. Falcon* (2023) 92 Cal.App.5th 911, 949-952 [noting split of authority and remanding for resentencing], review granted Sep. 13, 2023, S281242.)

Senate Bill No. 567 added an additional consideration relevant here: if the defendant "has experienced psychological, physical, or childhood trauma," and it was "a contributing factor in the commission of the offense," the court must impose the low term "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6)(A).) We review this determination for abuse of discretion. (*People v. Achane*, *supra*, 92 Cal.App.5th at p. 1044.)

It is undisputed that Brown suffered psychological and physical trauma because of the 2012 attack. The trial court did not make an explicit finding whether it was "a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6).) But based on the seriousness of the current offenses and Brown's prior record, the trial court's implied findings that the aggravating circumstances outweighed the mitigating circumstances and imposition of the lower term would be contrary to the interests of justice were not an abuse of

20

discretion.

*Errors in abstracts of judgment*

Brown notes several errors in the determinate and indeterminate abstracts of judgment that must be corrected. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  The Attorney General agrees.  The clerk shall correct the abstracts as follows:

*1.  Abstract of judgment—determinate*

Date of hearing: date of resentencing

Judge: judge for resentencing

Section 15: execution of sentencing imposed at resentencing per decision on appeal (box b rather than a)

Section 16: credit for time served pursuant to sections 2933 and 4019 as of date of resentencing

*2.  Abstract of judgment—indeterminate*

Date of hearing: date of resentencing

Judge: judge for resentencing

Section 3: two (not four) five-year priors

Section 5: delete sentence of life with the possibility of parole (retain section 6b, 25 years to life on count 1)

Section 9a: restitution fine is stayed

Section 9c: $41 theft fine is stayed

Section 12:  indeterminate count [not counts] is consecutive with determinate sentence

Section 14: execution of sentencing imposed at resentencing per decision on appeal (box b rather than a)

Section 15: use date of resentencing.

We do not accept the Attorney General's concession that the two five-year enhancements for prior serious felony convictions (§ 667, subd. (a)(1)) must be stricken from the determinate sentence.  They do not enhance the conviction for

21

section 69 because it is not a serious felony.  (§§ 667, subd. (a)(1) & (4), 1192.7, subd. (c).)  Instead, they enhance the sentence for robbery, which is a serious felony.  (§ 1192.7, subd. (c)(19).) " 'Once the minimum indeterminate term is calculated, "other enhancements or punishment provisions," such as section 667(a) enhancements, are added as a separate determinate term to the indeterminate term,' " to be served consecutively.  (*People v. Williams* (2004) 34 Cal.4th 397, 403; *People v. Flores* (2021) 63 Cal.App.5th 368, 379.)  The clerk properly added the two five-year enhancements to the six-year term for count 3 for a total determinate sentence of 16 years.

## DISPOSITION

The matter is remanded to correct errors in the abstracts of judgment.  In all other respects, the judgment is affirmed.  The trial court shall prepare amended abstracts of judgment and send a certified copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.

CODY, J.

22

Thomas R. Adams II, Judge

Superior Court County of Santa Barbara

———————————————

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.